UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DWAYNE HARRIS, | ) | CASE NO. 1:06 CV 2342 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| JULIUS WILSON, | ) | AND ORDER |
| | ) | |
| Respondent. | ) | |

On September 27, 2006, pro se petitioner Dwayne Harris filed the above-captioned petition for a writ of habeas corpus under 28 U.S.C. § 2254. Mr. Harris is incarcerated in the Richland Correctional Institution. He asserts that the State of Ohio violated his constitutional rights by applying the current parole guidelines to determine his eligibility for release. In addition, he filed an Application to Proceed In Forma Pauperis. That Application is granted.

**Background**

Mr. Harris was convicted of aggravated burglary and rape in 1982 and was sentenced to 7 to 25 years incarceration. (Compl. Ex. E.) In 1989, while on parole for those convictions, Mr. Harris committed new offenses which led to three different criminal cases in Cuyahoga County, Ohio. He was indicted and convicted on charges of kidnaping, rape, and felonious assault in Case No. CR-235106, in connection with the abduction, rape, and shooting of a female victim. The conviction included gun and aggravated felony specifications. He was sentenced to thirteen to

twenty-five years on the charge of kidnaping, thirteen to twenty-five years on the charge of rape, twelve to fifteen years on the felonious assault charge, and three years on the gun and aggravated felony specifications. In Case No. CR-236656, Mr. Harris was indicted and pled guilty to one count of rape, in connection with the sexual assault of a seventeen year old female. He was sentenced to ten to twenty-five years incarceration. While in jail awaiting resolution of these proceedings, Mr. Harris assaulted another inmate. This led to his indictment on one count of felonious assault with specifications in Case No. CR-236857. Mr. Harris pled guilty to the reduced charge of aggravated assault and was sentenced to one and one-half years incarceration. All of Mr. Harris's 1989 sentences were to be served concurrent to each other, but consecutive to the sentence he received in 1982. His maximum aggregate sentence will expire in June 2035.

In 1998, and again in 2000, the Ohio Adult Parole Authority ("OAPA") revised its guidelines to evaluate a prisoner's suitability for release on parole. These guidelines assign a numerical offense category to an inmate based upon the nature of his or her crime, and a risk score based upon several factors including the inmate's criminal record, and institutional behavior. The two numbers are then placed on a grid which determines if the inmate is suitable for release, or in the alternative, the recommended number of months the inmate should serve before he or she is again considered for parole. These guidelines are not mandatory and the OAPA has the discretion to depart upward or downward from the guideline score.

Mr. Harris first became eligible for parole on December 19, 2000. To determine his suitability for release, the OAPA applied the parole guidelines which were adopted earlier that year. Based on these guidelines, the OAPA found that Mr. Harris's two convictions for rape, his conviction for kidnaping and his conviction for felonious assault in Case No. CR-235106 and Case No. CR-236656 constituted Category 10 offenses. Petitioner was then awarded a score of 4 on the

risk/ recidivism scale.  This placed him the guideline range of 150-210 months to be served before release on parole.  The guideline range was then adjusted for conduct which exhibited rescission behavior while incarcerated.  The OAPA considered his 3 prison disciplinary infractions for use or possession of drugs or alcohol and his 5 other significant prison disciplinary infractions, and added 9-18 months and 0-10 months respectively to the guideline range.  The OAPA also considered his 1989 conviction for assaulting an inmate while in custody.  The OAPA, however, determined the amount of time to add to the guideline range by looking at the felonious assault offense for which he was indicted, rather than the reduced offense of aggravated assault to which he pled guilty.  Felonious assault is considered a Category 7 offense which added 48-60 months to the guideline range.  Based upon these findings, the OAPA arrived at an adjusted guideline range of 207-288 months, and determined that petitioner should serve two hundred sixty three (263) months of his sentence before becoming eligible for release.  His next parole hearing was scheduled for December 2010.

   Mr. Harris filed a complaint for declaratory judgment in the Franklin County Court of Common Pleas in February 2001 to challenge the State of Ohio's use of the new parole guidelines to deny his release on parole.  He claimed that the State of Ohio lacked legal authority to change the parole guidelines, that the application of the guidelines violated double jeopardy, that he was denied equal protection, that he was denied due process, and that the retroactive application of the guidelines to prisoners convicted prior to their development violated ex post facto prohibitions.  He also argued that the OAPA's consideration of the felonious assault charge for which he was indicted rather than the aggravated assault charge to which he entered his guilty plea breached his plea agreement with the State of Ohio.  The court rendered its decision in favor of the defendant and Mr. Harris appealed the decision.

In his appeal, he raised three assignments of error. First, he claimed that the parole board should have used the parole guidelines in place at the time of his conviction. Second, he argued that the parole board lacked the authority under Ohio law to consider in its parole evaluation a crime for which Mr. Harris had been indicted but not convicted. Third, he asserted that the new guidelines violated Ex Post Facto prohibitions. On November 27, 2001, the Ohio Tenth District Court of Appeals affirmed the trial court's decision on Mr. Harris's first and third grounds, but reversed the ruling with regard to his second ground for relief. The court concluded that to apply the parole guidelines to the offense for which Mr. Harris was indicted and not the offense of which he was convicted, violated his right to due process. The case was remanded to the trial court. See Harris v. Wilkinson, No. 01AP-598, 2001 WL 1497194 (Ohio App. 10 Dist. Nov. 27, 2001)(Compl. Ex. H.) He appealed that decision to the Ohio Supreme Court. On March 4, 2002, the Ohio Supreme Court declined jurisdiction.

Mr. Harris then filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 in this court on May 29, 2002. That case, No. 1:02 CV 1007 was assigned to United States District Judge Kathleen M. O'Malley. In the petition, Mr. Harris raised three grounds for relief. First, he claimed that the OAPA breached his plea agreement in Case No. CR-236857 when it considered his indicted offense of felonious assault and not the offense of which he was convicted to determine his offense category score. Second, he asserted that the OAPA lacked authority to continue his parole eligibility hearing for two hundred sixty three (263) months. Finally, he contended that the OAPA's use of the revised guidelines violated the Ex Post Facto Clause. Because Mr. Harris raised those issues in his declaratory judgment action which had been remanded to the Franklin County Court of Common Pleas, Judge O'Malley dismissed Mr. Harris's petition without prejudice for failing to exhaust his state court remedies on July 15, 2002.

Five months later, on December 18, 2002, the Ohio Supreme Court issued its decision in Layne v. Ohio Adult Parole Authority, 97 Ohio St. 3d 456 (2002), striking down the OAPA's practice of assigning the guideline offense category score based not only on the offense of conviction, but also on crimes which were charged in the indictment but which were later dismissed under a plea agreement. The court stated that the OAPA must begin its decision-making process concerning parole eligibility by assigning an inmate the offense category score that corresponds to the actual offense of which the inmate was convicted. Id. at 463. It reasoned:

> [T]he words "eligible for parole" in former R.C. 2967.13(A) ought to mean something. Inherent in the statutory language is the expectation that a criminal offender will receive meaningful consideration for parole. In our view meaningful consideration for parole consists of more than just a parole hearing in which an inmate's offense of conviction is disregarded and parole eligibility is judged largely, if not entirely, on an offense category that does not correspond to the offense or offenses of conviction set forth in the plea agreement.

Id. at 463-64. The court further emphasized that the OAPA "still retains its discretion to determine that an inmate should serve his or her maximum sentence," and in making that determination could consider relevant facts and circumstances relating to the offense or offenses of conviction, "including crimes that did not result in conviction as well as other factors the [OAPA] deems relevant." Id. at 464.

In light of the Layne decision, Mr. Harris received a second parole hearing on April 22, 2003. At this hearing, Mr. Harris again was placed in offense category 10, and was assigned a risk score of 4 which placed him in the guideline range of 150-210 months. He was then given 12-24 months additional time due to 4 prison disciplinary infractions involving possession of alcohol or a controlled substance, and 0-14 months additional time for 7 other significant prison disciplinary infractions. His aggravated assault conviction was factored into this adjustment for

5

rescission behavior as a custodial disciplinary infraction which resulted in a felony conviction. He received an additional 24-36 months for this conviction. This placed him in the guideline range of 186-274 months. He was told he would be required to serve 245 months until his next hearing. His hearing was continued to June 2009, which was one year and six months earlier than the parole continuation he received at his first hearing.

Mr. Harris's declaratory judgment action proceeded in the Franklin County Court of Common Pleas on remand from the Tenth District Court of Appeals. With leave of court, Mr. Harris filed an amended complaint on March 2, 2004. (Pet. Ex. L.) The content of that complaint is not described in this petition before the court. Once again, judgment was rendered in favor of the State of Ohio. Mr. Harris appealed that decision, raising two assignments of error. First, he claimed that the OAPA still violated his plea agreement because the sentence for his aggravated assault had expired at the time of his parole hearing. Second, he argued that the parole guidelines violated the separation of powers doctrine. The court determined that the OAPA could still consider any offenses of which he was convicted. The court also stated that it would not consider Mr. Harris's separation of powers claim, because although he had asserted this claim in his original complaint filed in 2001, he had not included it in his amended pleading filed after the case was remanded. They indicated that his amended pleading superceded the original pleading and concluded therefore that he was raising this claim for the first time on appeal. The judgment of the trial court was affirmed. Mr. Harris appealed that decision to the Ohio Supreme Court. On March 4, 2006, the Ohio Supreme Court declined to entertain the appeal.

Thereafter, Mr. Harris filed the within petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 27, 2006. The petition contains four grounds for relief. First, he contends that the OAPA's use of parole guidelines to determine suitability for release violates

6

the separation of powers doctrine. Second, he claims that the OAPA breached his plea agreement in Case No. CR-236857 when it considered his offense of aggravated assault because at the time he was given his second parole hearing following the Layne decision, he had already served that sentence. Third, he asserts that the OAPA lacks authority under Ohio law to continue his parole eligibility hearing. Finally, he contends that the OAPA's use of the revised guidelines violates the Ex Post Facto Clause. For the reasons stated below, the petition is denied and this action is dismissed with prejudice.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, was signed into law on April 24, 1996. The provisions of the AEDPA apply to habeas corpus petitions filed after that effective date. Lindh v. Murphy, 521 U.S. 320, 336 (1997), See also Woodford v. Garceau, 538 U.S. 202, 210 (2003); Barker v. Yukins, 199 F.3d 867, 871 (6th Cir. 1999)("It is now well settled that AEDPA applies to all habeas petitions filed on or after its April 24, 1996 effective date."). Because Mr. Harris's petition was filed on September 26, 2006, the AEDPA governs this court's consideration of his petition.

The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, and 'to further the principles of comity, finality, and federalism.'" Woodford, 538 U.S. at 206 (citing Williams v. Taylor, 529 U.S. 362, 436 (2000)). In advancing such goals, Section 2254(d) places new constraints on "the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Williams, 529 U.S. at 412. Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of

the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A federal court may grant a petition for a writ of habeas corpus filed by a person in state custody only on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States and only if "it appears that ... the applicant has exhausted the remedies available in the courts of the State...." 28 U.S.C. § 2254(a) &(b)(1); Hannah v. Conley, 49 F.3d 1193, 1196 (6th Cir. 1995) (per curiam); Clemmons v. Sowders, 34 F.3d 352, 354 (6th Cir. 1994). "The exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990) (citations omitted). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). For the claim to be exhausted, it must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. Koontz v. Glossa, 731 F.2d 365, 369 (6th Cir. 1984). Moreover, the claim must be presented to the state courts under the same theory in which it is later presented in federal court. Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998). It cannot rest on a theory which is separate and distinct from the one previously considered and rejected in state court.

**Exhaustion of State Court Remedies**

Mr. Harris arguably did not properly exhaust his state court remedies for each claim he asserts herein. He initiated his challenge to the denial of his parole with a declaratory judgement action filed in the common pleas court. He was denied relief. He appealed that decision to the Tenth District Court of Appeals which affirmed in part, reversed in part, and remanded his action to the trial court for further consideration. Mr. Harris attempted to appeal that decision to the Ohio Supreme Court, but they declined to accept jurisdiction. (Pet. Ex. M.) On remand to the Franklin County Court of Common Pleas, Mr. Harris, with consent of the court, filed an amended complaint. There is no indication of the content of that amended pleading. The court of common pleas once again issued its decision in favor of the defendant. He appealed that judgment. In its decision to affirm the trial court, the Tenth District Court of Appeals addressed only Mr. Harris claim that the OAPA breached his plea agreement. It refused to consider Mr. Harris's claim that the OAPA violated the separation of powers doctrine because the claim had not been asserted in the amended complaint. Mr. Harris did not raise in his appeal his claims of Ex Post Facto violations, or lack of authority under Ohio law to change parole eligibility. It is therefore arguable that he did not exhaust all of his state court remedies prior to filing this action.

Generally, petitioner's failure to exhaust state court remedies requires dismissal of the entire petition. See Rose v. Lundy, 455 U.S. 509, 522 (1982). Where, however, "the federal constitutional claim [is] plainly meritless and it would be a waste of time and judicial resources to require exhaustion," exhaustion may be excused. Cain v. Redman, 947 F.2d 817, 820 (6th Cir. 1991). Because the claims in this petition are meritless, exhaustion is not required. Id.

## Analysis

As an initial matter, Mr. Harris's claims are all premised on the idea that he was entitled to release or at least serious consideration for release at his first parole hearing. There is

9

no constitutional or inherent right of a prisoner to be conditionally released on parole before the expiration of the maximum term of his or her sentence." Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). The Ohio parole statutes do not create a protected liberty interest for due process purposes and therefore the decision to grant or deny parole is entirely within the discretion of the Ohio Adult Parole Authority. Jago v. Van Curen, 454 U.S. 14, 20 (1981). Mr. Harris had no constitutional right to be released at his earliest parole eligibility date. Id.

### A. Separation of Powers

Mr. Harris first asserts that the OAPA violated the doctrine of separation of powers between the judicial branch and the executive branch of the State of Ohio when it determined at his first parole hearing the amount of time he should serve before being released on parole. He contends that it is the function of the judiciary to set the minimum term of an indefinite sentence. This claim is not cognizable for purposes of federal habeas corpus review. The United States Constitution governs the separation of powers between the executive, legislative, and judicial branches of the federal government. See Whalen v. United States, 445 U.S. 684, 689 n. 4 (1980) ("the doctrine of separation of powers embodied in the Federal Constitution is not mandatory on the States.") The separation of powers between a state trial judge and state parole board members is a matter of state law. Austin v. Jackson, 213 F.3d 298, 302 (6th Cir. 2000). A federal court may not grant habeas relief based upon "a perceived error of state law." Id.

### B. No Authorization to Change Eligibility

Similarly, Mr. Harris's claim that the parole board lacked the authority under Ohio Revised Code § 2967.13(A) to change parole eligibility requirements is not grounds for federal habeas relief. As noted above, a writ of habeas corpus is available only if a petitioner is in custody

10

in violation of the Constitution or laws of the United States.  28 U.S.C. § 2254.  "State courts are the ultimate expositors of state law." Mulaney v. Wilbur, 421 U.S. 684, 691 (1975); see Gall v. Parker, 231 F.3d 265, 303 (6th Cir.2000).  A violation of state law cannot support a claim for federal habeas relief.

### C. Breach of Plea Agreement

As his third ground, Mr. Harris asserts that the OAPA violated the terms of his plea agreement because he had completely served his sentence for his aggravated assault conviction when that offense was considered to determine his suitability for release on parole.  It is well-established that "the law does not permit a criminal defendant to bargain away his constitutional rights without receiving in return ... the benefit of his bargain...." Bercheny v. Johnson, 633 F.2d 473, 476 (6th Cir.1980); accord United States v. Brummett, 786 F.2d 720, 722 (6th Cir.1986). See also United States v. Wesley, 13 Fed. Appx. 257, 259 (6th Cir.2001) ("Plea agreements are subject to an analysis of the rights and duties of the parties similar to the law of contracts.") The Ohio courts determined that the OAPA's consideration of the aggravated assault conviction did not breach his plea agreement and, in fact, Ohio law required them to factor that conviction into the consideration of suitability for release.  For purposes of federal habeas corpus review, this court must now determine whether that decision that was contrary to, or involved an unreasonable application of, clearly established Federal law.

Although the offense which lead to Mr. Harris's assault conviction occurred while Mr. Harris was in custody serving time on his current convictions, he contends that he has fully served the one and a half year sentence, and to continue to consider this assault conviction for parole suitability purposes has the effect of making his sentence run consecutive and not concurrent to his lengthier sentences.  He claims that this breaches his plea agreement.  The Ohio Supreme

Court in its Layne decision, found that the OAPA breached the plea agreements of inmates when it based its offense category score on crimes for which the inmates were indicted but were not convicted.  Layne, 97 Ohio St. 3d at 463-64.  The court reasoned that the inmates gave up their rights to defend the greater charges by entering into the plea agreement and were then deprived of the benefit of that bargain, and due process, by the consideration of the more severe indictment offense at the parole hearing.  Id.  This, however, is not the situation with which Mr. Harris was faced.

In Mr. Harris's case, the OAPA considered the crime to which he pled guilty, when determining whether he was suitable for release.  Mr. Harris's offense category score of 10 was based on his 1989 convictions for kidnaping, rape, and assault.  His criminal history score was calculated at 4, which placed him in the guideline range of 150-210 months.  The guidelines were then adjusted to reflect rescission behavior while in custody for his current convictions.  Under this portion of the parole decision sheet, the OAPA must consider prison Class II disciplinary rules infraction violations, and any infraction which led to a new felony conviction.  Mr. Harris received an additional 12-38 months for receiving disciplinary infractions and 24-36 months for his assault of a fellow inmate which resulted in a felony conviction.  The fact that he had completed his sentence for this assault during his continued incarceration does not affect the calculation.  The OAPA considered the actual offense to which Mr. Harris pled guilty to arrive at its parole determination.  Mr. Harris cites no legal theory to suggest how this action violates Federal law, and no such legal theory to support this claim cannot be construed from the face of the petition.

### D. Ex Post Facto

Finally, Mr. Harris contends that application of the 1998 and 2000 parole guidelines to inmates convicted prior to these dates violates the Ex Post Facto Clause of the United States

Constitution. He states that a law will violate ex post facto prohibitions if it is applied retroactively and if it disadvantages the individual affected by it. This, however, is not the criteria established by the United States Supreme Court. Contrary to Mr. Harris's assertion, not every change in a convicted person's situation violates prohibitions against ex post facto laws. A law implicates the Ex Post Facto Clause only if it criminalizes conduct that was not a crime when it was committed, increases the punishment beyond what it was at the time the act was committed, or deprives a person of a defense available at the time the act was committed. Collins v. Youngblood, 497 U.S. 37, 42 (1990).

As an initial matter, Ohio's internal parole guidelines are not 'laws' for ex post facto purposes because they do not carry the weight of statutory authority and do not absolutely restrict the decisions of parole officials. Ruip v. United States, 555 F.2d 1331, 1335-36 (6th Cir. 1977)(upholding retroactive application of the federal parole guidelines); see Shabazz v. Gabry, 123 F.3d 909, 913 (6th Cir. 1997)(Ohio's parole guidelines are not laws); Michael v. Ghee, 411 F.Supp.2d 813, 819-21 (N.D. Ohio 2006)(Ohio's parole guidelines are not laws and do not violate the ex post facto clause). The guidelines were not created by a statute or a regulation and do not bind the discretion of parole officials. Michael, 411 F. Supp. 2d at 820. The OAPA "still retains its discretion to determine that an inmate should serve his or her maximum sentence," and in making that determination could consider relevant facts and circumstances relating to the offense or offenses of conviction, "including crimes that did not result in conviction as well as other factors the [OAPA] deems relevant." Layne 97 Ohio St. 3d at 464; see Ruip, 555 F.2d at 1333; Michael, 411 F. Supp. 2d at 820. The fact that the overwhelming majority of the parole decisions arguably adhere to the recommended guideline range does not cause the guidelines to be considered 'laws' for ex post facto purposes. Michael, 411 F. Supp. 2d at 820.

13

Moreover, even if the guidelines could be considered to be 'laws,' they do not violate ex post facto prohibitions.  While retroactive changes in parole laws may, in some instances, violate the Ex Post Facto Clause, not every procedural change which creates a risk of affecting an inmate's conditions of confinement are prohibited.  Garner v. Jones, 529 U.S. 244, 249-50 (2000). The relevant inquiry with respect to ex post facto claims is whether the amendment to a particular law "produces a sufficient risk of increase in the measure of punishment attached to the covered crimes."  Id.; Shabazz, 123 F.3d at 913.  The United States Supreme Court, in Garner upheld a law which retroactively lengthened the time between parole hearings, noting that the law permitted expedited reviews and reconsideration based on suitability for release, and that it did not alter the prisoner's initial parole hearing date.  Garner, 529 U.S. at 250.  Similarly, the United States Sixth Circuit Court of Appeals decided that the Ohio parole guidelines do not pose a sufficient risk of increase in the measure of punishment because the Ohio parole officials have complete discretion in determining whether to grant or deny parole.  Kilbane v. Kinkela, 24 Fed. Appx. 241, 243 (6th Cir. 2001); see Coleman v. Ohio Adult Parole Authority, No. 99-4516, 2000 WL 1871680 (6th Cir. Dec. 11, 2000)(finding the amended guidelines do not create a sufficient risk of increased punishment).[1]  At least one other United States District Court in Ohio considered this issue and arrived at the same conclusion.  See Michael, 411 F. Supp. 2d at 820-21.  Based on this precedent, Mr. Harris's claim for violation of the Ex Post Facto Clause must be dismissed.

---

[1] See also Warren v. Wilkinson, No. 00-3197, 2000 WL 1828734 (6th Cir. Dec. 5, 2000)(determining that Ohio's amended guidelines which went into effect on March 1, 1998, did not impose a greater punishment than that which was contemplated when the crime was committed.); Lackey v. Ghee, No. 99-4169, 2000 WL 1434632 (6th Cir. Sept. 22, 2000)(finding that Ohio's amended parole guidelines have not extended plaintiff's measure of punishment); Conley v. Ghee, No. 99-4419, 2000 WL 1175465 (6th Cir. Aug. 11, 2000)(stating that the new guidelines act as "flexible guideposts" which do not restrict the OAPA's discretion to grant parole in appropriate cases and therefore do not violate the Ex Post Facto Clause);

## Conclusion

Accordingly, Mr. Harris's Application to Proceed <u>In Forma Pauperis</u> is granted and this action is dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases.  Further, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and there is no basis upon which to issue a certificate of appealability.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

*/s/SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE